UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO: 8:21-cr-121-CEH-JSS

VIRGILIO VALENCIA-GAMBOA,
CRISTIAN VIERA-GONGORA and
PABLO DAVID ZAMORA-
MIRANDA
_____/

## ORDER

This matter comes before the Court on Defendant Virgilio Valencia-Gamboa's Emergency Motion for Immediate Release from Custody Pursuant to 18 USC § 3164 (Doc. 43), filed on September 15, 2021. In the motion, Valencia-Gamboa requests the Court immediately release him on his own recognizance pending trial pursuant to 18 USC § 3164 because he has been held in custody for more than 90 nonexcludable days. Co-Defendants, Cristian Viera-Gongora and Pablo David Zamoa-Miranda, filed motions to join Valencia-Gamboa's motion and similarly argue they should be immediately released. Docs. 44, 45. The Government filed a response in opposition on September 20, 2021. Doc. 50. A hearing on the motions was held on September 23, 2021. The Court, having considered the motions, heard argument of counsel, and being fully advised in the premises, will grant Defendants' motions for release from custody, pursuant to 18 U.S.C. § 3164, subject to a hearing on October 18, 2021 to determine the conditions of Defendants' release, as this issue was not sufficiently addressed at the hearing on September 23, 2021.

## BACKGROUND

An April 1, 2021 indictment charged Defendants, Valencia-Gamboa, Viera-Gongora, and Zamoa-Miranda (collectively "Defendants"),[1] with conspiracy with intent to distribute five (5) kilograms or more of cocaine and possession with intent to distribute five (5) kilograms or more of cocaine on board a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. §§ 70503(a), 70506(a) and (b); 18 U.S.C. § 2; and punishable under 21 U.S.C. § 960(b)(1)(B)(ii). Doc. 1. The charges arose after Defendants were interdicted in international waters by the United States Coast Guard on March 23, 2021, and a search of Defendants' go-fast vessel led to the discovery of approximately 250 kilograms of cocaine and 100 pounds of marijuana. Doc. 25-1.

Defendants were served with arrest warrants on April 7, 2021 in Ft. Lauderdale, Florida. Docs. 9, 10, 11. On April 8, 2021, first appearances were conducted by a magistrate judge in the Southern District of Florida. Doc. 12 at 9; Doc. 13 at 9; Doc. 14 at 15. Stipulated bonds in the amount of $250,000 were set and removal proceedings scheduled. *See id.* On April 13, 2021, the court in Miami held status and removal hearings for Zamora-Miranda and Viera-Gongora. Doc. 12 at 10; Doc. 13 at 10. On April 14, 2021, a removal hearing was conducted for Valencia-Gamboa. Doc. 14 at

---

[1] A fourth Defendant, Rodrigo Quinetro-Riomalo, was also charged in the Indictment. Doc. 1. On June 15, 2021, the Government moved to dismiss the Indictment against this Defendant on the grounds of medical incapacity. Doc. 15. The motion was granted on June 16, 2021, and the Indictment against Quintero-Riomalo was dismissed without prejudice. Doc. 16.

16. Defendants waived removal, and the court ordered them removed and committed to the prosecuting district, the Middle District of Florida.

Defendants were then transported and booked into a county jail facility in the Middle District of Florida on May 11, 2021, where they are still incarcerated. Doc. 43 at 2; Docs. 44, 45. In support, they provide an email from the U.S. Marshals Service. Doc. 43 at 12.

On August 6, 2021, the Magistrate Judge noticed this case for hearing on August 24, 2021 in the Middle District of Florida, Tampa Division. Doc. 19. Defense counsel in the Middle District of Florida were appointed for each Defendant on August 9, 2021. Docs. 21, 22, 23. On August 24, 2021, Defendants were arraigned on the indictment in the Middle District of Florida, and the Magistrate Judge entered a pretrial discovery order. Docs. 34, 35. The case was scheduled for trial during the Court's October 2021 trial term.

On September 15, 2021, Defendant Valencia-Gamboa moved for immediate release because he has been detained in the Middle District of Florida for 127 days, he is incarcerated awaiting trial solely for this offense, and the delay is not attributable to him or his counsel. Doc. 43 at 3. Viera-Gongora and Zamoa-Miranda filed motions joining in Valencia-Gamboa's motion and requesting their immediate release. Docs. 44, 45.

## DISCUSSION

Defendants move for immediate release pursuant to 18 U.S.C. § 3164. In pertinent part, section 3164 provides that the trial of a person being held in detention

solely because he is awaiting trial "shall commence not later than ninety days following the beginning of such continuous detention." 18 U.S.C. § 3164(b). Thus, a defendant seeking release under § 3164(c) must show both that the 90-day clock has run and that the delay was "through no fault of the accused or his counsel." Failure to timely commence the trial of a detainee, through no fault of defendant or his counsel, "shall result in the automatic review by the court of the conditions of release." *Id.* The "no fault" language in § 3164(c) does not limit the availability of the § 3161(h) exclusions.

In his motion, in which the codefendants join, Defendant Valencia-Gamboa argues that from the time of the interdiction to the date of his motion, he has been incarcerated 176 days, and between his first appearance in Miami and the time of his motion has been a period of 154 days. He acknowledges that the factors in 18 U.S.C. § 3161(h) outline excludable time, but he submits that only ten days to transport him from Miami to the Middle District of Florida would be considered excludable time under section 3161 and any time beyond that would be unreasonable.[2] Regardless of the time of transportation, Defendant argues he has been sitting in jail in the Middle District of Florida awaiting trial for 127 days, none of which is attributable to him or his counsel. Doc. 43 at 3. Because he has been incarcerated more than 90

---

[2] Section 3161(h) states, in relevant, part, that "delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable." 18 U.S.C. § 3161(h)(1)(F).

nonexcludable days, Defendant contends that the statute and case law demand his immediate release.

The Government responds that at the time of their arrest, each Defendant was subject to an immigration detainer. Doc. 50; Doc. 50-1. After their arrest on April 7, 2021, Defendants made their initial appearances in the Southern District of Florida ("SDFL") on April 8, 2021 and were represented by counsel. On April 13 and 14, 2021, the SDFL court ordered Defendants removed and committed to the Middle District of Florida ("MDFL"). Defendants were transported from the SDFL on May 11, 2021, and booked into the Glades County jail, which is in the MDFL, on May 11, 2021. According to the Government, due to his medical condition, Defendant Quintero-Riomalo never made an initial appearance in the SDFL and he was not removed to the MDFL. Upon motion of the Government, the Court dismissed the indictment against Quintero-Riomalo on June 16, 2021. Docs. 15, 16.

The Government submits the various time periods argued by Defendants are irrelevant as the clock did not begin for purposes of section 3164 until June 16, 2021, when the Indictment against Quintero-Riomalo was dismissed. In that regard, the Government contends the delay associated with the removal of former codefendant, Quintero-Riomalo, is excludable under section 3161(h)(6), which provides that "[a] reasonable period of delay [is excludable] when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has

been granted."[3] Even if the 90-day time period began June 16, 2021, however, Defendants' motions were filed on September 15, 2021, which was the 91st day. Thus, as the Government concedes, the non-excludable period of detention exceeds 90 days.[4] Doc. 50 at 4. It is undisputed that, as of September 15, 2021, Defendants have been detained for 91 days of nonexcludable time.

    Notwithstanding Defendants' detention for 91 days of nonexcludable time, the Government argues the motions for release are due to be denied because the Defendants are subject to immigration detainers, which it argues precludes the Defendants' release. Doc. 50 at 4. In support, the Government cites *United States v. Magana-Olvera*, 917 F.2d 401 (9th Cir. 1990), in which the district court's denial of release was upheld because there was an immigration detainer in place and the detention was not solely due to the defendant awaiting trial. *Id.* at 406. However, *Magana-Olvera* is distinguishable. First, the case primarily involved a challenge to the expiration of the 70-day time limit prescribed by the Speedy Trial Act. Second, the existence of a detainer is referenced only in passing. Third, the case fails to identify the reason for the immigration detainer, as Defendant Roman Magana-Olvera was a participant in an undercover drug operation in Pasco, Washington. *Id.* at 406. Here,

---

[3] As to Quintero-Riomalo, the time up to his dismissal would be considered excludable under § 3161(h)(4), which includes "[a]ny period of delay resulting from the fact that the defendant is . . . physically unable to stand trial." 18 U.S.C. § 3161(h)(4). *See also* 18 U.S.C. § 3161(h)(1)(A) ("delay resulting from any proceeding, including any examinations, to determine the . . . physical capacity of the defendant" is excludable).

[4] Of note, the time since filing the motions would be excludable. *See* 18 U.S.C. § 3161(h)(1)(D).

6

Defendants were not found in this country illegally. They were paroled here for the purpose of prosecution. The sole reason for the detainer in this case is in connection with the Defendants being brought into this country to be prosecuted under the MDLEA, as opposed to a detainer in the context of an illegal reentry or commission of some other additional crime, such as a state charge.

Finally, the Government argues that it would be incongruous to consider the 90-day time period expired when the 70-day clock under the Speedy Trial Act has not yet expired.[5] Thus, regardless of the presence of detainers, the Government contends that release would frustrate the central purpose of the Speedy Trial Act of avoiding "an extended period of pretrial freedom by the defendant during which time he may flee, commit other crimes, or intimidate witnesses." Doc. 50 at 6 (quoting *United States v. Worthy*, 699 F.3d 661, 664 (1st Cir. 2012). Thus, the Government argues the motions for release should be denied.

The Eleventh Circuit has recognized that if a defendant "has been detained for more than 90 nonexcludable days, as defined by 18 U.S.C. § 3161(h), the clear language of [section 3164] requires that an order of release must issue from this court." *United States v. Gates*, 935 F.2d 187, 188 (11th Cir. 1991) (citing *United States v. Tirasso*, 532 F.2d 1298, 1299-1300 (9th Cir. 1976)).[6] While informative, as discussed at the

---

[5] Defendants have filed separate motions arguing the 70-day period has expired under the Sixth Amendment and/or the Speedy Trial Act. *See* Docs. 47, 64. The Court will address these motions by separate order.
[6] *Tirasso* has been called into question by later cases, *see United States v. Torres*, 995 F.3d 695 (9th Cir. 2021), but only to the extent that it pre-dated the inclusion of section 3161(h) factors in the calculation of non-excludable time.

hearing, *Gates* is likewise distinguishable from the facts of the instant case. There was no immigration detainer in the *Gates* case.

Defense counsel also relies on Bail Reform Act cases for the proposition that a district court may not order detention of a non-citizen defendant pending trial on the possibility of his detention or removal by immigration authorities. Specifically, Defendants argue the Bail Reform Act requires certain procedures to be followed. *See United States v. Ailon-Ailon*, 875 F.3d 1334 (10th Cir. 2017) ("Bail Reform Act directs court to consider a number of factors and make pre-trial detention decisions as to removable aliens on a case-by-case basis.") (citations omitted); *United States v. Santos-Flores*, 794 F.3d 1088, 1090–91 (under the Bail Reform Act, the court must determine whether such an alien may flee or pose a danger to any other person or the community); *United States v. Adomako*, 150 F. Supp. 2d 1302 (M.D. Fla. Jun 14, 2001) ("If the [DHS] official does not take custody during a period of not more than ten days, Congress directs the Court to apply the normal release and detention rules to the deportable alien without regard to the laws governing release in [DHS] deportation proceedings.").

In *Adomako*, the court specifically noted that "Congress chose not to exclude deportable aliens from consideration for release or detention in criminal proceedings." *Id.* at 1304. Thus, under 18 U.S.C. § 3142(d)(1)(B), if a judicial officer determines that a defendant is "not a citizen of the United States or lawfully admitted for permanent residence," and "such person may flee or pose a danger to any other person or the community," the "judicial officer shall order the detention of such person, for a period

8

of not more than ten days . . . and direct the attorney for the Government to notify the appropriate court, probation or parole official, or State or local law enforcement official, or the appropriate official of the [Department of Homeland Security]." Section 3142 requires a judicial officer to "hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). At the September 23rd hearing, counsel did not present argument regarding these factors, *i.e.*, the likelihood of flight and the danger to the community.[7] Accordingly, the Court will hold a hearing on October 18, 2021 at 3:00 p.m. to take evidence and hear argument, pursuant to the Bail Reform Act, regarding the factors set forth therein, including whether Defendants are a flight risk or a danger to others.

Accordingly, it is hereby

**ORDERED**:

1. Defendant's Emergency Motion for Immediate Release from Custody Pursuant to 18 USC § 3164 (Doc. 43) is **GRANTED,** subject to a hearing on October 18, 2021 to determine the conditions of Defendants' release.

2. Cristian Viera-Gongora's motion (Doc. 44) to join Valencia-Gamboa's motion is **GRANTED**.

---

[7] Of note, the magistrate judge in the Southern District set a bond of $250,000. Docs. 1, 13, 14.

3. Defendant Pablo David Zamoa-Miranda's motion (Doc. 45) to join Valencia-Gamboa's motion is **GRANTED**.

**DONE AND ORDERED** in Tampa, Florida on October 15, 2021.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any