## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                            Case No: 8:21-cr-121-CEH-JSS

VIRGILIO VALENCIA-GAMBOA,
CRISTIAN VIERA-GONGORA, and
PABLO DAVID ZAMORA-
MIRANDA
_____/

## O R D E R

This cause comes before the Court upon the Joint Motion to Dismiss with
Prejudice for Violation of the Sixth Amendment Right to a Speedy Trial, Federal Rule
of Criminal Procedure 48(b), and Plan for Prompt Disposition of Criminal Cases (Doc.
47), and the Motion to Dismiss with Prejudice for Violation of the Speedy Trial Act,
18 U.S.C. § 3161 (Doc. 64).

A grand jury indicted Defendants Virgilio Valencia-Gamboa, Cristian Viera-
Gongora, and Pablo David Zamora-Miranda in the Middle District of Florida on April
1, 2021. They did not appear before the Court for arraignment until 145 days later.
Now, with trial around the corner, they move to dismiss the indictment on the basis
of this delay under the Sixth Amendment and Rule 48(b) of the Federal Rules of
Criminal Procedure. Viera-Gongora also seeks dismissal under the Speedy Trial Act,
18 U.S.C. §§ 3161–3174. But their Sixth Amendment basis lacks muster, the Court
declines to exercise discretion to dismiss the indictment, and Viera-Gongora's analysis

of the Speedy Trial Act and accompanying cases is flawed. Therefore, the Court will deny each of the motions.

## I.  BACKGROUND

On or about March 23, 2021, the United States Coast Guard detected a "go-fast" vessel in a known drug-trafficking area of international waters. Doc. 25-1 at 2. Packages consistent with contraband were visible on the vessel's deck. *Id.* The Coast Guard suspected the vessel of engaging in drug trafficking. *Id.* The Coast Guard found Rodrigo Quintero-Riomalo and Defendants Virgilio Valencia-Gamboa, Cristian Viera-Gongora, and Pablo David Zamora-Miranda on board. *See* Doc. 1 at 1-3. The Coast Guard also found approximately 250 kilograms of cocaine and 100 pounds of marijuana. Doc. 25-1.

The Government and Defendants agree that the Coast Guard subsequently detained Defendants and Quintero-Riomalo. Doc. 47 at 2; Doc. 63 at 2; *see* Doc. S-75-4 at 2. On April 1, 2021, a grand jury indicted Defendants and Quintero-Riomalo in the Middle District of Florida for conspiring to possess with intent to distribute five kilograms or more of cocaine and possessing with intent to distribute five kilograms or more of cocaine. Doc. 1 at 2–3, 5. On April 7, 2021, Defendants and Quintero-Riomalo were arrested on the indictment in Fort Lauderdale, Florida. Doc. 9 at 1; Doc. 10 at 1; Doc. 11 at 1. The next day, Defendants made their initial appearances before a magistrate judge in the United States District Court for the Southern District of Florida, who appointed counsel for Defendants for proceedings in the Southern District of Florida. Doc. 12 at 2, 9, 12; Doc. 13 at 2, 9, 12; Doc. 14 at 2, 15, 17.

On April 13, 2021, another magistrate judge held a removal hearing and ordered Zamora-Miranda and Viera-Gongora removed from the Southern District of Florida and committed to the Middle District of Florida. Doc. 12 at 2, 12; Doc. 13 at 2, 12. The order directed the United States Marshal to transport Zamora-Miranda and Viera-Gongora to the Middle District of Florida. Doc. 12 at 12; Doc. 13 at 12. A nearly identical order issued for Valencia-Gamboa on April 14, 2021. Doc. 14 at 2, 17.

On May 13, 2021, the United States Marshals Service in Tampa notified the courtroom deputies in the Tampa Division of the Middle District of Florida of a group of prisoners, including Defendants, who had been transferred from the Southern District of Florida into the Middle District of Florida and were housed at the Glades County jail. Doc. 63-1 at 5. Thereafter, the Court granted the Government's request to dismiss the indictment against Quintero-Riomalo. Doc. 16 at 1.

More time passed. A July 19, 2021 "Prisoners in Custody" report from the United States Marshals Service in Tampa did not list Defendants. *See* Doc. S-70. On August 6, 2021, the assigned Magistrate Judge scheduled an arraignment for Defendants via videoconference from the Glades County jail for August 24, 2021. Doc. 20. On August 9, 2021, the Magistrate Judge appointed counsel for Defendants. Doc. 21 at 1; Doc. 22 at 1; Doc. 23 at 1. Defendants appeared before the Magistrate Judge for the first time for arraignment on the indictment on August 24, 2021. Doc. 34 at 1. On the same day, the Magistrate Judge set this action for trial on the Court's October 2021 trial term, which began on October 4, 2021. Doc. 35 at 6. The trial of this action is scheduled to begin with jury selection on October 29, 2021. Doc. 58 at 3.

Defendants move to dismiss the indictment with prejudice under the Sixth Amendment to the United States Constitution and Rule 48(b) of the Federal Rules of Criminal Procedure. Doc. 47 at 1. First, they argue that their speedy trial rights under the Sixth Amendment have been violated. Doc. 47 at 12. Second, they argue the delays warrant dismissal under Rule 48(b) of the Federal Rules of Criminal Procedure and the Court's Plan to Minimize Undue Delay and Further Prompt Disposition of Criminal Cases. *Id.* at 12–17. The Government responds to these arguments, arguing that the law demonstrates no violation of Defendants' rights to a speedy trial under the Sixth Amendment and that neither Rule 48(b) nor the Middle District of Florida's Plan to Minimize Undue Delay and Further Prompt Disposition of Criminal Cases affords a basis for dismissal. Doc. 63 at 4–11. The Court held an evidentiary hearing on October 5, 2021. Doc. 71 at 1–2.

Viera-Gongora also moves to dismiss the indictment with prejudice under the Speedy Trial Act. Doc. 64 at 5–8. Although the Government has not filed a written response to that motion, the Government's counsel represented during the evidentiary hearing that the Government was prepared to argue in opposition to the motion. *See* Doc. 71 at 2. Because Viera-Gongora's counsel also indicated sufficient preparation to argue the motion, the Court heard argument on the motion. *Id.*

## II.    LEGAL STANDARDS

The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI. "[T]he right to a speedy trial is as fundamental as any

4

of the rights secured by the Sixth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967). Given the "unique policies underlying this right," a court must dismiss an indictment upon finding a violation of a defendant's right to a speedy trial. *United States v. Villarreal*, 613 F.3d 1344, 1349 (11th Cir. 2010) (quoting *Strunk v. United States*, 412 U.S. 434, 440 (1973)). However, this remedy is an "extraordinary" one. *Id.*

The Federal Rules of Criminal Procedure also allow a court to dismiss an indictment if "unnecessary delay" occurs in bringing a defendant to trial. Fed. R. Crim. P. 48(b)(3).

Finally, "[i]n any case in which a plea of not guilty is entered, the trial of a defendant charged in an . . . indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the . . . indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1).

## III.   ANALYSIS

The analysis begins with the Joint Motion to Dismiss before turning to the Motion to Dismiss with Prejudice for Violation of the Speedy Trial Act. For the reasons articulated below, the Court will deny each motion.

### A. The Court Will Deny the Joint Motion to Dismiss

Defendants offer two bases for dismissal: (1) the Sixth Amendment to the United States Constitution; and (2) Rule 48(b), Fed. R. Crim. P., and the Court's Plan to Minimize Undue Delay and Further Prompt Disposition of Criminal Cases.

5

### 1.  Defendants' Sixth Amendment Argument Fails

Defendants first argue that their speedy trial rights under the Sixth Amendment have been violated. In *Barker v. Wingo*, the United States Supreme Court set forth four factors for determining whether a defendant's constitutional speedy trial right has been violated: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his speedy trial right; and (4) the prejudice to the defendant. 407 U.S. 514, 530 (1972); *see also Doggett v. United States*, 505 U.S. 647, 651 (1992) (explaining that the Supreme Court's cases have "qualified the literal sweep" of the Speedy Trial Clause by recognizing the relevance of the *Barker* factors). "If, after the threshold inquiry is satisfied and the second and third factors are considered, all three of these factors weigh heavily against the Government, the defendant need not show actual prejudice (the fourth factor) to succeed in showing a violation of his right to a speedy trial." *United States v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2010). The analysis of these factors is a "balancing test" that weighs the conduct of the prosecution and the defendant. *Barker*, 407 U.S. at 530.

### i.  *Delay is Not Presumptively Prejudicial*

The first factor—the length of the delay—serves as a "double enquiry." *Doggett*, 505 U.S. at 651. "Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay . . . ." *Id.* (quoting *Barker*, 407 U.S. at 530–31). If the accused shows a presumptively prejudicial delay, the court must consider, as the second part of this inquiry, "the extent to which the delay stretches beyond the bare

minimum needed to trigger judicial examination of the claim." *Doggett*, 505 U.S. at 652. To that end, the longer the pretrial delay extends beyond the bare minimum needed to demonstrate presumptive prejudice, the stronger the presumption that the pretrial delay prejudiced the defendant. *Villarreal*, 613 F.3d at 1350. "The length of the delay itself weighs against the government, incrementally increasing in weight as the delay becomes increasingly protracted, and a particularly lengthy delay may also affect [the] analysis of the fourth *Barker* factor." *Id.* But "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. Thus, this first factor is a "threshold inquiry" that a defendant must satisfy before a court will evaluate the remaining factors. *Villarreal*, 613 F.3d at 1350.

The question, then, is when does a delay qualify as a "presumptively prejudicial" delay. The Supreme Court has recognized that "the length of the delay that will provoke such an inquiry [into other *Barker* factors] is necessarily dependent upon the peculiar circumstances of the case," *Barker*, 407 U.S. at 530–31, but "[d]epending on the nature of the charges, the lower courts have found postaccusation delay 'presumptively prejudicial' at least as it approaches one year," *Doggett*, 505 U.S. at 652 n.1. The Eleventh Circuit has held that "[d]elays exceeding one year are generally found to be 'presumptively prejudicial.'" *Ingram*, 446 F.3d at 1336 (citing *Doggett*, 505 U.S. at 652 n.1). By way of example, the Eleventh Circuit has held that a

17-month delay entitled defendant to a presumption of prejudice. *United States v. Clark*, 83 F.3d 1350, 1352 (11th Cir. 1996).

Determining the length of the pretrial delay involves "calculat[ing] the time that elapsed between when the Sixth Amendment right attached until trial (or, until the pretrial motion to dismiss on this ground is determined)." *Villarreal*, 613 F.3d at 1350 (internal quotation marks omitted). "The Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the date of trial." *United States v. Walters*, 591 F.2d 1195, 1200 (5th Cir. 1979) (citing *Dillingham v. United States*, 423 U.S. 64 (1975)).[1]

Here, the Government indicted Defendants on April 1, 2021, and Defendants were arrested on the indictment on April 7, 2021. As such, the Sixth Amendment right to a speedy trial attached on April 1, 2021. The trial is scheduled to commence with jury selection on October 29, 2021. Thus, nearly seven months will have elapsed between the indictment and the trial of this action. Similarly, nearly seven months have elapsed between the indictment and the issuance of this order, in which the Court rules on the motion. *See United States v. Gonzalez-Castro*, No. 6:09-cv-142-CEH-GJK, 2013 WL 3153979, at *7 (M.D. Fla. June 19, 2013) ("As the Court is ruling on the Motion to Dismiss in June 2013, with trial set for July 2013, the delay has been approximately four years.").

---

[1] In *Bonner v. City of Prichard,* the Eleventh Circuit adopted as binding precedent all opinions of the former Fifth Circuit handed down prior to October 1, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Defendants must demonstrate that this nearly seven-month delay is presumptively prejudicial. The delay here falls over five months short of a delay exceeding one year, which the Eleventh Circuit generally recognizes as presumptively prejudicial. Five months short from one year, this time period also appears to fall short of a delay "approach[ing] one year." *Doggett*, 505 U.S. at 652 n.1. Defendants fail to cite to any case where a court found that a delay of nearly seven months qualified as presumptively prejudicial. And a thorough search does not reveal any cases in which a court held that a nearly seven-month delay qualified as presumptively prejudicial.

However, some Eleventh Circuit authority supports the proposition that a seven-month delay does not qualify as "presumptively prejudicial." In an unpublished opinion, the Eleventh Circuit cited to *United States v. Otero-Hernandez*, 743 F.2d 857 (11th Cir. 1984), as a case where the Eleventh Circuit "not[ed] that a seven-month delay is not 'presumptively prejudicial' within the meaning of the test for a speedy trial violation." *United States v. Vickers*, 333 F. App'x 458, 461 (11th Cir. 2009).[2] In *Vickers*, a magistrate judge concluded in a report and recommendation that "the seven-month post-indictment delay alleged by Defendant" was insufficient to be presumptively prejudicial so as to rise to a constitutional speedy trial violation. *United States v. Vickers*, No. 06-80191-CR, 2007 WL 2986379, at *6 (S.D. Fla. Oct. 10, 2007), *aff'd*, 333 F. App'x 458 (11th Cir. 2009). As such, the magistrate judge recommended finding that the first factor of the *Barker* test did not weigh heavily against the Government and,

---

[2] Unpublished opinions of the Eleventh Circuit are not binding precedent, but may be cited as persuasive authority. 11th Cir. R. 36-2.

even if the defendant's post-indictment delay was presumptively prejudicial, the defendant's constitutional speedy trial claim failed under the *Barker* test. *Id.* The district judge adopted the magistrate judge's report and recommendation, thereby denying the defendant's motion to dismiss the indictment. *Id.* at *1.

Affirming the district court on appeal, the Eleventh Circuit explained that the defendant failed to show that he was presumptively prejudiced by the delay and, although the court was not obligated to analyze the other *Barker* factors, the defendant nevertheless failed to show that the cause of the delay was improper, that the government received his request for a speedy trial, or that he was actually prejudiced. 333 F. App'x at 461. In setting forth the governing legal standards, the Eleventh Circuit cited *Otero-Hernandez* as noting that a seven-month delay is not "presumptively prejudicial" under the speedy trial test. *Id.*

In *Otero-Hernandez*, the Eleventh Circuit noted that the appellant had presented only a statutory Speedy Trial Act violation claim to the district court, but had attempted on appeal to present a claim of a constitutional violation of his right to a speedy trial. 743 F.2d at 858 n.3. The court "note[d] in passing that such a claim, properly presented, would be meritless; a seven-month delay is not 'presumptively prejudicial' within the meaning of the test for a speedy trial violation articulated in *Barker* . . . ." *Id.*

Authority from outside the Eleventh Circuit also supports the proposition that a seven-month delay does not qualify as "presumptively prejudicial." For example, the Sixth Circuit has held that a delay of 265 days—approximately nine months and longer

than the delay in this action—between the filing of an indictment and trial was not presumptively prejudicial, explaining that "[d]elays several months short of one year are not 'uncommonly long,' especially in cases involving multiple defendants and pre-trial motions." *United States v. Gardner*, 488 F.3d 700, 719 (6th Cir. 2007). As such, the Sixth Circuit ceased its examination and did not look at other *Barker* factors. *Id.* Similarly, in *United States v. White*, a six-and-one-half-month delay did not constitute a presumptively prejudicial delay.[3] 985 F.2d 271, 275 (6th Cir. 1993).

The Eighth Circuit has held that, where "[o]nly a little over seven months elapsed between [the defendant's] indictment and trial," this delay was "too brief a delay to trigger review of his Sixth Amendment speedy trial claim." *United States v. McFarland*, 116 F.3d 316, 318 (8th Cir. 1997), *abrogated on other grounds by United States v. Knights*, 534 U.S. 112 (2001). Similarly, the Eighth Circuit has held that 267 days— "a little shy of nine months"—was not presumptively prejudicial where "the case involved several coconspirator defendants, voluminous discovery, several requests from defendants for continuances, and motions for . . . counsel to withdraw." *United States v. Cooke*, 853 F.3d 464, 472 (8th Cir. 2017). And, relying on *McFarland*, the Eighth Circuit has also held that, where the period between the defendant's indictment and guilty plea was "slightly less than seven months," the defendant was not entitled to any relief under the Speedy Trial Clause of the Sixth Amendment because the

---

[3] In *White*, the Sixth Circuit explained that, although there was an eleven-month delay from the time the government indicted the defendant, the actual delay was only six-and-one-half months because the defendant participated in the delay. 985 F.2d at 275.

Eighth Circuit had previously recognized that "a little over seven months was "too brief to trigger review" of a defendant's Sixth Amendment speedy trial claim." *United States v. Lozano*, 413 F.3d 879, 883 (8th Cir. 2005). On the other end of seven months, the Eighth Circuit has held that, where a defendant suffered a delay "of only eight months with regard to" one count of the indictment, the defendant did not suffer presumptive prejudice related to that count, given the complexity and the length of the trial. *United States v. Tiltbach*, 339 F.3d 692, 699 (8th Cir. 2003).

The Seventh Circuit has described nine months—a period of time longer than the delay here—as "barely long enough to constitute presumptive prejudice." *United States v. White*, 443 F.3d 582, 590 (7th Cir. 2006). Citing to a case finding an eight-month delay as presumptively prejudicial and a robbery case finding a pretrial delay of approximately eight months not presumptively prejudicial, the Seventh Circuit explained that the nine-month delay was "within the range that [the court] has found long enough to warrant a more searching analysis." *Id.* And the Tenth Circuit has recognized that fourteen months, but not eleven, may qualify as "presumptively prejudicial." *United States v. Abdush-Shakur*, 465 F.3d 458, 465 (10th Cir. 2006).[4] Thus,

---

[4] The Ninth Circuit has noted that, within the Ninth Circuit, "a six-month delay constitutes a 'borderline case.'" *United States v. Tanh Huu Lam*, 251 F.3d 852, 856 (9th Cir. 2001). The Ninth Circuit has also cited a Second Circuit case for the proposition that the case "suggest[ed] that there is a general consensus of about 8 months," *United States v. Beamon*, 992 F.2d 1009, 1013 (9th Cir. 1993) (citing *United States v. Vassell*, 970 F.2d 1162, 1164 (2d Cir. 1992)), but the Second Circuit has clarified that it simply cited to a law review article in that case and did not discuss whether it agreed with the article, nor did it hold to that effect, *United States v. Sterling*, 763 F. App'x 63, 65 (2d Cir. 2019).

extensive authority demonstrates that the delay here does not qualify as a presumptively prejudicial delay.

Defendants mention the Supreme Court's opinion in *Strunk v. United States*, 412 U.S. 434 (1973), as a case "involving only a ten-month delay" where the Supreme Court held that "dismissal was the exclusive remedy available in regard to a determination that a particular defendant was in fact denied his rights to a speedy trial." Doc. 47 at 5–6. But *Strunk* does not stand for the proposition that a ten-month delay is presumptively prejudicial. In *Strunk*, the Seventh Circuit held the petitioner-defendant had been denied a speedy trial, but that the "extreme" remedy of dismissal of the charges was unwarranted, which resulted in the Seventh Circuit remanding the case to the district court to reduce the petitioner's sentence "to the extent of 259 days in order to compensate for the unnecessary delay which had occurred between the return of the indictment and petitioner's arraignment." 412 U.S. at 435. The Seventh Circuit stated that the ten-month delay was unusual and required both explanation and justification. *Id.*

However, the Supreme Court granted certiorari only on the petitioner's claim that, "once a judicial determination has been made that an accused has been denied a speedy trial, the only remedy available to the court is to reverse the conviction, vacate the sentence, and dismiss the indictment." *Id.* (internal quotation marks omitted). The Government did not file a cross-petition for the Supreme Court to review the Seventh Circuit's determination that the petitioner had been denied a speedy trial. *Id.* As such, in the absence of a cross-petition for certiorari questioning the holding of whether the

13

petitioner was denied a speedy trial, the only issue before the Court was the propriety of the Seventh Circuit's fashioned remedy. *Id.* at 437. And "[g]iven the unchallenged determination that the petitioner was denied a speedy trial," the Supreme Court held that the district court's judgment of conviction needed to be set aside. *Id.* at 440. Thus, *Strunk* does not provide any helpful guidance for determining whether the nearly seven-month period here is presumptively prejudicial. Even if the Court somehow gleans from *Strunk* that a ten-month delay serves as a presumptively prejudicial delay, the delay here falls several months short of a ten-month delay.

Defendants' remaining arguments for this threshold inquiry are unpersuasive to show that the delay qualifies as presumptively prejudicial. In discussing this factor, Defendants argue that the Government caused the delay entirely, Quintero-Riomalo's return to his home country has resulted in his unavailability as a witness, and Defendants have been incarcerated during the delay.[5] Doc. 47 at 6–7. These arguments do not demonstrate that the delay qualifies as a presumptively prejudicial delay, nor does a review of the circumstances of this case, including the charges, compel the conclusion that these circumstances render the delay one that provokes inquiry into the remaining *Barker* factors.

---

[5] During the hearing, Defendants attempted to distinguish cases addressing presumptive prejudice on the grounds that Defendants were in custody. But Defendants fail to point to cases where courts considered whether a defendant was incarcerated in determining whether a delay qualified as a presumptively prejudicial delay. Defendants' counsel also argued that the Defendants "should still get the benefit of [the Court] running through the factors because they were in custody. As explained above, the Court undertakes a complete analysis of the *Barker* factors.

Therefore, Defendants fail to establish that the nearly seven-month delay here qualifies as a presumptively prejudicial delay. The delay falls approximately five months short of the benchmark for delays generally recognized as presumptively prejudicial. A review of case law indicates that a seven-month delay is not presumptively prejudicial. And Defendants' arguments for the seven-month delay qualifying as presumptively prejudicial are unavailing. Because Defendants fail to satisfy this threshold inquiry, the Court need not proceed to the remaining *Barker* factors and will deny Defendants' request for relief under the Sixth Amendment.

Nonetheless, to provide a complete analysis, the Court will examine the remaining *Barker* factors. But even if the Court proceeds to the remaining *Barker* factors, weighing those factors does not show that Defendants' speedy trial rights under the Sixth Amendment have been violated.

Proceeding to the second part of the inquiry under the first factor, the Court must consider the extent to which the nearly seven-month delay stretches beyond the minimum needed to trigger judicial examination. As mentioned above, the longer that the pretrial delay extended beyond the bare minimum needed to show presumptive prejudice, the stronger the presumption that the delay prejudiced the defendant. Here, the delay does not extend beyond the bare minimum needed to show presumptive prejudice. The delay here is much shorter than those delays that extend well beyond one year. *See*, *e.g.*, *Villarreal*, 505 U.S. at 652 ("The ten-year delay in this case clearly satisfies the threshold inquiry of presumptive prejudice."); *Clark*, 83 F.3d at 1352 (concluding that a 17-month delay was sufficient to entitle the defendant to a

presumption of prejudice). The length of the delay is tied to the weight afforded to the delay. For purposes of this analysis where the Court proceeds past the "presumptively prejudicial" inquiry, this factor weighs only slightly against the Government.

*ii.   Neutral Reason for the Delay*

Next, the Court must examine the reason for the delay. The Government carries the burden of demonstrating valid reasons for the delay. *Villarreal*, 613 F.3d at 1351; *see Ingram*, 446 F.3d at 1337 ("'Because the prosecutor and the court have an affirmative constitutional obligation to try the defendant in a timely manner . . . the burden is on the prosecution to explain the cause of the pre-trial delay.'"). A court allocates different weight to different reasons for delay:

> (1) "[a] deliberate attempt to delay the trial in order to hamper the defense [is] weighted heavily against the government"; (2) "[a] more neutral reason such as negligence or overcrowded courts [is] weighted less heavily [against the government] but nevertheless [is] considered since the ultimate responsibility for such circumstances must rest with the government rather than the defendant"; and (3) "a valid reason, such as a missing witness, ... serve[s] to justify appropriate delay."

*Villarreal*, 613 F.3d at 1351 (11th Cir. 2010) (alterations in original) (quoting *Barker*, 407 U.S. at 531.)

Thus, while negligence falls between the two extremes of an intentional attempt to delay trial and a valid excuse, a court must nevertheless consider negligence since "the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *United States v. Oliva*, 909 F.3d 1292, 1301 (11th Cir. 2018) (internal quotation marks omitted). Although a court should weigh negligence

"more lightly than a deliberate intent to harm the accused's defense, [negligence] still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Doggett*, 505 U.S. at 657. And "toleration of negligence varies inversely with the length of the delay that the negligence causes." *Oliva*, 909 F.3d at 1302. Thus, analyzing this factor overlaps to some extent with the analysis for the first factor: the length of the delay "impacts" the determination of whether the Government's negligence weighs heavily against it. *Id.*

Defendants argue that the Court should weigh this factor heavily against the Government. Doc. 47 at 8. According to Defendants, the delay "appears solely attributable to the Government" because "the Government chose the venue of the case," the Government brought Defendants to a different district for their initial appearance, "the executive branch (the Government) solely chose the date of transport," the Government did not inform the Court of Defendants' presence in this district following their transport, and the Government "clearly knew of the case" and Defendants' presence in this district when they moved to dismiss the indictment against Quintero-Riomalo in June of 2021. *Id.* at 7–8. In addition to introducing evidence during the evidentiary hearing, Defendants' counsel presented argument on this point. On the other hand, the Government, which bears the burden of demonstrating valid reasons for the delay, contends that "the delay falls somewhere between a 'valid reason' and a 'neutral reason.'" Doc. 63 at 6. The Government has also provided evidence and submitted argument during the hearing.

The evidence demonstrates that this delay qualifies as a neutral-reason delay. Following the April 1, 2021 Middle District indictment, Defendants were booked into FDC Miami for initial appearances. Doc. S-75-4 at 1. They were arrested on April 7, 2021, and, on April 8, 2021, made their initial appearance before a magistrate judge in the Southern District of Florida. As explained above, removal orders for Defendants issued on April 13 and 14, 2021.

E-mails chains provided by the Government and Defendants supply context for subsequent developments and resulting confusion. On May 13, 2021, the United States Marshals Service in Tampa sent an e-mail, which advised that a group of prisoners, including Defendants, had been transferred from the Southern District to the Middle District that week and were housed at the Glades County jail. Doc. 63-1 at 5; Doc. S-75-5 at 2. Glades County is within the Middle District, albeit within the Fort Myers Division. Local R. M.D. Fla. 1.04(a). Thus, approximately one month elapsed between the issuance of the removal orders in the Southern District and Defendants' arrival in the Middle District. The e-mail, which is part of an e-mail chain, was sent to Middle District courtroom deputies, including the courtroom deputy for the assigned Magistrate Judge, and certain individuals with "usdoj.gov" e-mail addresses.[6] Doc.

---

[6] The e-mail addresses for some of those individuals have "USMS" next to the names, indicating their employment with the Marshals Service. Doc. 63-1 at 5; Doc. S-75-5 at 2. When questioned about two specific e-mail addresses that do not include such designations during the hearing, the Government's counsel represented that the Marshals Service employs one of these individuals and that an inquiry into the other individual's employment did not indicate that he works for the United States Attorney's office. Defendants have not argued that this e-mail was addressed to individuals at the United States Attorney's office.

63-1 at 5; Doc. S-75-5 at 2. In this e-mail, the Marshals Service asked the recipients to advise within 24 hours if any of the individuals should be produced for court. Doc. 63-1 at 5; Doc. S-75-5 at 2.

On May 14, 2021, the courtroom deputy for the assigned Magistrate Judge inquired whether the Marshals Service knew the facility where Defendants would be housed. Doc. 63-1 at 4. On the same day, the Marshals Service responded by referring to the subject line of the e-mail, which indicated that Defendants were housed in Glades County. Doc. S-75-6 at 5. The courtroom deputy replied that she assumed that Defendants had been transferred "into our custody," but that they were still in Glades County and, thus, they had not yet been housed in the Middle District. *Id.* at 4–5. The Marshals Service advised that Glades County is within the Middle District. *Id.* at 4.

Remaining evidence reveals inconsistent representations concerning Defendants' presence in Glades County and also suggests that Court staff were waiting to determine whether Defendants would be transferred to one of the "usual" facilities. A week later, on May 21, 2021, the courtroom deputy asked the Marshals Service to provide a Zoom hyperlink for the Glades County jail in case the assigned Magistrate Judge "wanted to proceed in setting [Defendants'] arraignment since they have not yet arrived in our of our usual jails." Doc. 75-6 at 4. This e-mail led to internal e-mails

between members of the Marshals Service about the process for video-teleconference hearings at the Glades County jail.[7] *Id.* at 2–3.

Next, on July 13, 2021, the courtroom deputy asked the Marshals Service whether Defendants were still in Glades County. Doc. 63-1 at 4. The Marshals Service responded that Defendants were housed in the Glades County jail. *Id.* The Marshals Service also provided a new e-mail address for video-teleconference hearings. *Id.* But then, on July 19, 2021, the courtroom deputy—along with other Tampa Division courtroom deputies, United States Attorney's office personnel, and Federal Defender's office personnel—received a "Prisoners in Custody" report from the Marshals Service that did not list Defendants, even though the report listed other individuals housed in Glades County. *See* Doc. S-70.

On August 6, 2021, the Marshals Service sent an e-mail to the courtroom deputy, which copied the assigned Assistant United States Attorney and advised that Defendants were still located in Glades County and had not been "produced for court" yet. Doc. 63-1 at 2. The courtroom deputy inquired whether Defendants would arrive more quickly "if they are actually scheduled for a court appearance as opposed to waiting until they arrive at one of our usual facilities." *Id.* The same day, the Magistrate Judge set the arraignment for Defendants for August 24, 2021. Doc. 20. And on August 17, 2021, the Marshals Service provided another "Prisoners in Custody"

---

[7] One of these e-mails suggests that the Marshals Service in Tampa does not usually facilitate video-teleconference hearings with the Glades County jail, but that the Marshals Service would explore this issue further. Doc. S-75-6 at 2.

report, dated the same day, which was forwarded to the United States Attorney's office. Doc. S-70-1. This time, the report indicated that Defendants were in custody at the Glades County jail. *Id.* at 12. Defendants were arraigned on August 24, 2021.

The provided evidence demonstrates that negligence caused the delay. Approximately one month after the removal orders, the Marshals Service transported Defendants to Glades County. The Government, as the party who carries the burden of explaining the delay, has not cogently addressed this one-month lag. One week after the Marshals Service promptly notified the courtroom deputy that Defendants were in Glades County and that Glades County is located within the Middle District, the courtroom deputy asked for a Zoom hyperlink because Defendants had not arrived in one of the "usual jails." Nearly two months elapsed before the courtroom deputy again inquired whether Defendants were still in Glades County, even though the Marshals Service had previously advised that Glades County was within the Middle District. These e-mails, together with the courtroom deputy's August 6, 2021 inquiry about whether Defendants would arrive more quickly if they were scheduled for a court appearance "as opposed to waiting until they arrive at one of our usual facilities," suggests that Court staff were waiting to determine whether Defendants would be transferred to one of the "usual" facilities. But nothing in the record indicates that Defendants were awaiting transfer to another Middle District facility. And although the Marshals Service advised the courtroom deputy in mid-July that Defendants were still in Glades County, the Marshals Service shortly thereafter omitted Defendants from the "Prisoners in Custody" list sent to both Court staff and the Government.

21

Ultimately, the Government carries the burden of demonstrating a valid reason for the delay. While this delay does not qualify as an intentional attempt to delay trial or hamper the defense, the delay falls short of a valid reason, such as a missing witness. The delay fits squarely within the "neutral" category due to negligence. Defendants "fell through the cracks" as a result of conflicting messages and Court staff confusion. But the Government, as the prosecuting authority, could have checked on the status of Defendants before the beginning of August. Indeed, the assigned Assistant United States Attorney filed a notice of substitution on July 15, 2021.[8] Doc. 18 at 1. Velez also testified that he reached out to the United States Attorney's office about the status of the case in the beginning of August and received a response after the Magistrate Judge appointed counsel for Defendants. The Marshals Service's conflicting statements and the confusion of Court staff does not transform the delay into an excusable or an acceptable one. Nonetheless, because toleration of negligence varies inversely with the length of the delay that the negligence causes, this factor does not weigh heavily against the Government; about four months lapsed between the removal orders and Defendants' appearance in the Middle District, and the delay will be less than seven

---

[8] Defendants argue that the Government "clearly knew of the case" and Defendants' presence in the Middle District when they moved to dismiss the charges against Quintero-Riomalo. Doc. 47 at 8. While Defendants knew of the case, it is not clear when the Government learned of Defendants presence in the Middle District. Further, Homeland Security Agent Anthony Velez, the lead agent on this investigation, testified that Deron Mangiocco was the operation manager who served as a liaison between the Marshals Service "and at some point the U.S. Attorney's office." Mangiocco's e-mail address is copied on the May 13, 2021 e-mail concerning Defendants' arrival in Glades County, but the record does not indicate that Mangiocco passed that information along to the United States Attorney's office.

months when trial commences. Thus, this factor weighs slightly against the Government.

### iii.   Defendants Asserted Their Speedy Trial Rights

The Court also must consider the assertion of the speedy trial right. Whether and how a defendant asserts his right to a speedy trial is "closely related" to the other factors: "[t]he strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences." *Barker*, 407 U.S. at 531. "The more serious the deprivation, the more likely a defendant is to complain." *Id.* Thus, "[t]he defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Id.* The rationale behind this principle is that "a timely demand for speedy trial often supports an inference that the defendant was not at fault for the delay and that the delay prejudiced the defendant." *Villarreal*, 613 F.3d at 1354 (citing *Barker*, 407 U.S. at 531). However, "the weight attached to a defendant's assertion of his speedy trial right will differ with the circumstances of the defendant's demand." *Id.* (citing *Barker*, 407 U.S. at 528–29). A defendant's failure to assert the speedy trial right "can hardly be counted against the defendant" for those periods during which the defendant "was unaware that charges had been lodged against him." *Id.*

Defendants first asserted their speedy trial rights under the Sixth Amendment when they filed the Joint Motion on September 16, 2021. Thus, this case differs from those cases in which a defendant failed to assert his or her speedy trial right. The weight

attached to Defendants' assertion of their speedy trial rights necessitates an examination of the circumstances of the demand, and Defendants' invocation of their rights is closely related to the other *Barker* factors. The Magistrate Judge first appointed counsel for Defendants, who are foreign and undoubtedly unfamiliar with this country's legal system, on August 9, 2021. Viera-Gongora's counsel first inquired about the cause of the delay on August 16, 2021. Doc. S-75-7 at 2–3. However, no evidence indicates that Defendants asserted their speedy trial rights before the Magistrate Judge during the arraignment on August 24, 2021, which was their first appearance before a judicial officer in this district. Instead, Defendants did not assert their speedy trial rights for another 22 days. Defendants' assertions also fall against a backdrop where less than seven months will have elapsed between the indictment and the trial of this action and the reason for the delay, discussed above extensively, qualifies as neutral. Separately, to the extent that *Barker* counsels the Court to look at prejudice, Defendants fail to establish that they suffered prejudice, as discussed below. These circumstances warrant finding that the factor weighs against the Government, but only slightly.

### iv. *Defendants Fail to Show Actual Prejudice*

The final factor is "the extent to which the defendant suffered actual prejudice from the delay." *Villarreal*, 613 F.3d 1355. Again, a defendant generally must demonstrate actual prejudice to succeed on his speedy trial claim if the first three factors do not weigh heavily against the government. *Id.* (citing *United States v. Dunn*, 345 F.3d 1285, 1296 (11th Cir. 2003)). Here, because the first three factors do not all

weigh heavily against the Government, Defendants must demonstrate actual prejudice to succeed on their Constitutional speedy trial claims.

A court should assess prejudice "in light of the interests of defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532. To that end, the Supreme Court has identified three such interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious." *Id.* Similarly, prejudice exists if defense witnesses cannot recall events of the distant past accurately. *Id.*

First, Defendants argue, unpersuasively, that they suffered prejudice because the dismissal of the indictment against Quintero-Riomalo rendered him "unavailable." Doc. 47 at 9. The Government moved to dismiss the indictment against Quintero-Riomalo on June 15, 2021. Doc. 15 at 1. The Court granted the motion and dismissed the indictment against Quintero-Riomalo without prejudice. Doc. 16 at 1. During the evidentiary hearing, Agent Velez testified to his understanding that the Government sought dismissal of the indictment against Quintero-Riomalo because of health issues. He explained that when Defendants and Quintero-Riomalo first landed in Fort Lauderdale, Quintero-Riomalo complained about breathing problems, but the jail accepted him, indicating that he was in good health. Velez later learned that Quintero-Riomalo was in a Miami hospital. Velez discussed the dismissal of the indictment with

an attorney in the United States Attorney's office, but he did not discuss Defendants. Velez testified that Quintero-Riomalo understood questions when he was released from the hospital, but he "sounded and spoke differently" from earlier. A Department of Homeland Security report indicates that on July 1, 2021, doctors at a Miami hospital stated that Quintero-Riomalo "was in [a] good health condition to be release[d] as soon as a week" and that he was cleared to travel without any medical restrictions. Doc. 63-2 at 3. The same report indicates that Quintero-Riomalo boarded a flight from Miami to Colombia on July 23, 2021. *Id.*

Defendants fail to demonstrate that they suffered actual prejudice as a result of the dismissal of the indictment against Quintero-Riomalo. The evidence demonstrates that the Government sought dismissal of the indictment because Quintero-Riomalo suffered from health issues. As the Government points out, even if Quintero-Riomalo had full use of his faculties, his potential to serve as a witness would depend on his choice to testify and potentially incriminate himself, not on anything within the control of the Government or Defendants. The Government also highlights that Quintero-Riomalo's dismissal from the case may actually prejudice the Government because it may allow Defendants to blame Quintero-Riomalo for the charged offenses. Without any demonstrated prejudice to Defendants, this argument is unavailing.

Next, Defendants argue that they suffered prejudice because the delay in their arraignment deprived them of an opportunity to invoke statutory rights under the Speedy Trial Act, 18 U.S.C. §§ 3161–3174, at an earlier date. Doc. 47 at 9–10. In a case where a defendant charged in an indictment enters a not-guilty plea, the trial must

commence within the latter of 70 days from the filing date of the indictment or from the date when the defendant has appeared before a judicial officer of the court in which the charge pends. 18 U.S.C. § 3161(c)(1). Here, the triggering date under § 3161(c)(1) is the date when Defendants appeared before the Magistrate Judge in this Court—August 24, 2021—because that date came after the April 1, 2021 indictment. Defendants argue that, by delaying Defendants' appearance before the Magistrate Judge, the Government delayed the onset of Defendants' statutory speedy-trial rights. Doc. 47 at 10.

In support of this argument, Defendants rely upon the Tenth Circuit's opinion in *United States v. Seltzer* to contend that they have suffered prejudice similar to the prejudice suffered by the defendant in that case. Doc. 47 at 9–10. The facts of *Seltzer* are distinguishable, though. There, the defendant, who was in state custody, faced a "Catch-22" where the state refused to release him because of pending federal proceedings and the federal prosecutors refused to prosecute him while state proceedings were ongoing. 595 F.3d 1170 1179 (10th Cir. 2010). The Government indicted the defendant in November of 2006, but decided not to proceed with an arraignment until after the state proceedings on unrelated charges were complete. *Id.* at 1174. Eight months later, the district court appointed counsel for the defendant. *Id.* The defendant's counsel sought the defendant's appearance before a magistrate judge for arraignment several times, but the Government consistently refused to bring the defendant before a magistrate judge until the state prosecution was complete. *Id.* Four months after appointment of counsel, the defendant entered a guilty plea to state

charges and, nine months after that plea, the Government filed a superseding indictment, which the defendant promptly moved to dismiss for violation of his Sixth Amendment right to a speedy trial. *Id.* at 1175. Two years after the initial indictment, the district court dismissed the superseding indictment. *Id.* at 1176. The court held that the defendant was prejudiced by the delay in his initial appearance because the delay deprived him of an opportunity to invoke his statutory rights under the Speedy Trial Act at an earlier time. *Id.* at 1180. The court highlighted that the Government brought the defendant before a judicial officer only after the grand jury's return of the superseding indictment, which occurred approximately 21 months after the initial indictment and approximately 13 months after appointment of counsel. *Id.*

Here, on the other hand, there was no "Catch-22." Defendants appeared before the Magistrate Judge a little over four months after the indictment issued. Similarly, Defendants were initially represented in the Southern District, and the Magistrate Judge appointed counsel for the proceedings in this Court approximately four months after Defendants' removal. While these delays are not lost on the Court, they are distinguishable from the delays in *Seltzer*. The Government did not actively refuse to bring Defendants before the Court, either.

In any event, as Defendants' counsel recognized during oral argument, the Speedy Trial Act does not contain a "hard-wired requirement [for] the date" by which a defendant must appear before a judicial officer of the Court where the charge pends. Of course, Defendants do not seek relief under § 3161(c) in the Joint Motion; 70 days from their appearance before the Magistrate Judge is November 2, 2021, by which

time their trial will be underway. Also, the implications of Defendants' argument are undefined: at what point does a failure to bring a defendant before a judicial officer under § 3161(c)(1) in a "timely manner" constitute prejudice to the defendant? Based on the foregoing reasons, this argument is unpersuasive.

Defendants also argue that the delay added to their pretrial incarceration. Doc. 47 at 9. Citing *Seltzer*, they contend that "[p]rolonged pretrial incarceration" like the delay here is a "well-established type of prejudice that a defendant may rely upon in making a Sixth Amendment speedy trial claim." *Id.* In *Seltzer*, the court noted that by maintaining a federal detainer instead of holding a detention hearing, the Government ensured that the defendant would remain in jail until the federal prosecution commenced. 595 F.3d at 1180. The court stated that "this type of prolonged pretrial incarceration is a well-established type of prejudice that a defendant may rely upon" in asserting a Sixth Amendment speedy trial claim. *Id.* But, as discussed above, the "Catch-22" interplay between the state proceedings and the federal proceedings in *Seltzer* resulted in a 21-month delay between the filing of the initial indictment and the filing of the superseding indictment. Further, two years elapsed between the filing of the initial indictment and the district court's dismissal of the superseding indictment. Here, comparable "prolonged pretrial incarceration" does not exist.[9]

---

[9] In the Joint Motion, Defendants also argue in passing that they remained incarcerated during the delay without counsel and were unable to challenge their detention. Doc. 47 at 9. During oral argument, Defendants' counsel argued that Defendants did not receive counsel until August 9, 2021, resulting in a "significant amount of time" that Defendants "sat in custody in a foreign country, not speaking the language [and] without an attorney." But Defendants do not explain how they suffered prejudice as a result of the delay in receiving

Ultimately, the dominant interest here is limiting the possibility of impairment to Defendants' defense. Defendants do not show, nor does the Court discern, any impairment. Similarly, Defendants do not expressly identify anxiety and concern, let alone show anxiety and concern extending beyond normal anxiety that accompanies a trial. *See United States v. Shepherd*, 511 F.2d 119, 123 (5th Cir. 1975) ("[A]nxiety is present in virtually every case. Something more than normal anxiety that accompanies a trial is necessary to show a degree of prejudice."

Finally, the Court recognizes that Defendants were incarcerated for several months before their appearance before the Magistrate Judge. To be sure, that extended pretrial incarceration prior to their appearance before the Magistrate Judge was unfortunate. "The time spent in a jail awaiting trial has a detrimental impact on the individual." *Barker*, 407 U.S. 532. However, the Court must assess any prejudice in light of the specified interests, including preventing oppressive pretrial incarceration. Defendants do not show that the pretrial incarceration here was unreasonably burdensome or severe for purposes of this analysis. *See* Merriam-Webster Dictionary, *Oppressive*, https://www.merriam-webster.com/dictionary/oppressive (last visited October 13, 2021) (defining "oppressive" as "unreasonably burdensome or severe").

---

counsel in this district. They do not argue this delay in appointment of counsel resulted in oppressive pretrial incarceration, anxiety and concern, or impaired their defense. Further, they do not argue that the delay in appointment of counsel resulted in interrogation of Defendants by law enforcement. In *Seltzer*, the Tenth Circuit found that the defendant suffered an impairment of his ability to prepare and defend his case, noting that he was denied the right to counsel, that the government appeared *ex parte* before the magistrate judge, and that the defendant went over six months before the district court appointed counsel at his request. 595 F.3d at 1180. As explained above, *Seltzer* is distinguishable.

Rather, Defendants only argue generally that their pretrial incarceration caused prejudice. Therefore, in addition to this factor not weighing against the Government, Defendants have failed to satisfy the requisite showing of actual prejudice. *See Villarreal*, 613 F.3d at 1355 (stating that a defendant generally must demonstrate actual prejudice to succeed on a speedy trial claim where the first three factors do not weigh heavily against the Government).

> v.  *Balancing the Factors Shows No Sixth Amendment Violation*

The Court will deny the Joint Motion because the nearly seven-month delay is not presumptively prejudicial. Even when analyzing the *Barker* factors, however, the first, second, and third factors weigh only slightly against the Government. The final factor does not weigh against the Government, and Defendants fail to establish actual prejudice. Therefore, Defendants' Sixth Amendment speedy trial rights were not violated. *See United States v. Wells*, 160 F. App'x 885, 890 (11th Cir. 2005) (holding that the defendant's Sixth Amendment right to a speedy trial was not violated where he failed to demonstrate that the first three factors weighed heavily against the Government and failed to show actual prejudice).

## 2. Defendants' Rule 48(b) and Plan to Minimize Undue Delay Argument Fails

Defendants also seek dismissal under Rule 48(b), Fed. R. Crim. P., and the Court's Plan to Minimize Undue Delay and Further Prompt Disposition of Criminal Cases. Doc. 47 at 12–15. Under Rule 48(b), the Court may dismiss an indictment if "unnecessary delay" occurs in bringing a defendant to trial. Fed. R. Crim. P. 48(b)(3).

This rule vests "much discretion" in the district court; dismissal is mandatory only if a defendant's constitutional rights have been violated. *Dunn*, 345 F.3d at 1297 (internal quotation marks omitted). Because Defendants' Sixth Amendment rights were not violated, Rule 48(b) does not require the Court to dismiss the indictment.

In seeking dismissal here, Defendants repeat many of their earlier arguments. They also point to specific provisions of the Court's Plan to Minimize Undue Delay. During oral argument, Defendants' counsel asked the Court to dismiss the indictment under Rule 48 to "send a message" that this type of delay "is unreasonable and unnecessary" and that Defendants suffered "real prejudice."

In exercising its discretion, the Court declines to dismiss the indictment under Rule 48. The delay here will be approximately seven months between the indictment and trial. The reason for the delay qualifies as neutral. Defendants have not demonstrated actual prejudice. The 70-day clock under the Speedy Trial Act has not expired. These recognitions do not warrant dismissal under Rule 48(b). Neither Defendants' arguments in the Joint Motion nor the arguments during the hearing persuade the Court otherwise. Defendants' cited provisions of the Plan to Minimize Undue Delay, which focus on defendants in custody, also do not provide a basis for dismissal.[10] Therefore, the Court denies the Joint Motion on this ground.

---

[10] For example, Defendants cite to a subsection entitled "Defendant in Custody and a High-Risk Defendant" that simply requires "[t]he trial of a defendant held solely in custody for the purpose of trial on a Federal charge" to commence within 90 days of the beginning of continuous custody. Doc. 47 at 35., Defendants move separately for similar relief under 18 U.S.C. § 3164, *see* Docs. 43, 44, 45, which states, in pertinent part, that the trial of a person being held in detention solely because he is awaiting trial "shall commence not later than

**B. The Court Will Deny the Motion to Dismiss with Prejudice for Violation of the Speedy Trial Act**

Viera-Gongora also moves to dismiss the indictment for violation of the Speedy Trial Act. The Court will deny this motion.

Under the Speedy Trial Act, in a case where a defendant charged in an indictment enters a not-guilty plea, the trial must commence within the latter of 70 days from the filing date of the indictment or from the date when the defendant has appeared before a judicial officer of the court in which the charge pends. 18 U.S.C. § 3161(c)(1). However, the Speedy Trial Act excludes delays due to certain enumerated events from this 70-day period. *Id.* § 3161(h). While some of these delays are automatically excludable, others are excludable only if the district court makes certain statutory findings. *Id.* Relevant here, the Speedy Trial Act excludes "[a]ny period of delay resulting from other proceedings concerning the defendant" from "computing the time within which the trial of any . . . offense must commence . . . ." *Id.* § 3161(h)(1). One such "period of delay resulting from other proceedings concerning the defendant" is a "delay resulting from transportation of any defendant from another district . . . except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the

---

ninety days following the beginning of such continuous detention," 18 U.S.C. § 3164(b). Defendants' other cited provision—also within this subsection—states that when a defendant is being held in custody "solely for the purpose of awaiting trial, the United States Attorney shall advise the Court at the earliest practicable time of the date of the beginning of such custody." *Id.* at 36. Defendants fail to explain how either provision justifies the Court's dismissal of the indictment.

destination shall be presumed to be unreasonable . . . ." *Id.* § 3161(h)(1)(F). "If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the . . . indictment shall be dismissed on motion of the defendant." *Id.* § 3162(a)(2).

The Eleventh Circuit recognizes that "the plain language of the statute establishes the triggering date as 'the date the defendant has appeared before a judicial officer of the court *in which such charge is pending*.'" *United States v. Wilkerson*, 170 F.3d 1040, 1042 (11th Cir. 1999) (emphasis in original). Viera-Gongora concedes the existence of this authority, but challenges the Eleventh Circuit's interpretation as "provid[ing] no post-indictment limit on the amount of time that the government can detain a defendant prior to presenting him in the charging district for arraignment and the starting of the 70-day clock." Doc. 64 at 3. Viera-Gongora argues that the United States Supreme Court's opinion in *Bloate v. United States*, 559 U.S. 196 (2010), renders the Eleventh Circuit's interpretation "untenable." *Id.* at 3–4. He contends that, after the removal order on April 14, 2021, the Speedy Trial Act afforded ten days of excludable time under § 3161(h)(1)(F) to transport Defendants for arraignment. *Id.* at 5. Based on *Bloate* and the Sixth Circuit's opinion in *United States v. Turner*, 602 F.3d 778 (6th Cir. 2010), he argues that the 70-day clock under § 3161(c)(1) "should have started no later than" April 26, 2021 because April 24, 2021, which was ten days after the removal order, was a Saturday. *Id.* at 5 n.1, 6. On this basis, he contends that the 70-day clock expired on June 10, 2021. *Id.* at 6.

These arguments fall short. Section 3161(c)(1) clearly provides that the trial must commence within the latter of 70 days from either the indictment's filing or from the date when the defendant appears before a judicial officer of the court in which the charge pends. Because the indictment was issued first, Defendants' appearance before a judicial officer of this Court, where the charges pend, serves as the triggering date of the 70-day clock. And because Defendants did not appear before a judicial officer of this Court until August 24, 2021, the 70-day clock did not commence until then. Thus, at the time of the removal orders, the 70-day clock had not commenced.

In arguing that the 70-day clock should have started on April 26, 2021, Viera-Gongora contorts the statutory language. Section 3161(h)(1) merely excludes from the computation of the time within which Defendants' trial must commence any "delay resulting from transportation" of Defendants from another district. Indeed, a court must dismiss an indictment where a defendant "is not brought to trial within the limit required by section 3161(c), *as extended by section 3161(h)* . . . ." 18 U.S.C. § 3162(2) (emphasis added). Any time exceeding ten days between a removal order and the defendant's arrival at the destination is only presumed to be unreasonable. *Turner*, 602 F.3d at 785 ("[A]fter a ten-day delay, § 3161(h)(1)(F) establishes a *presumption* of unreasonableness, not a conclusion of unreasonableness."). To that end, such time in excess of the ten-day period is excepted from excluded time when computing the time within which the trial must commence. But time in excess of the ten-day period does not trigger the 70-day clock. Here, although the triggering event under § 3161(c)(1) had not occurred, Viera-Gongora invites the Court to find that the triggering event under

that provision "should have started no later than April 26, 2021."[11] This argument contravenes the language of § 3161(c)(1). The statute does not establish a triggering date for when a defendant should have been brought before a judicial officer. *Wilkerson*, 170 F.3d at 1042. The Court will not read one into the statute on the basis of an absence of a post-indictment limit.

The Eleventh Circuit's interpretation of the statute is consistent with the statute's plain language. Neither *Bloate* nor *Turner* warrants a departure from the statute's plain language or otherwise warrants dismissing the indictment. In *Bloate*, the "narrow question" before the Court was "whether time granted to a party to prepare pretrial motions is automatically excludable from the Act's 70-day limit under subsection (h)(1), or whether such time may be excluded only if a court makes case-specific findings under subsection (h)(7)." 559 U.S. at 199. The Court reversed the Eighth Circuit's holding, explaining, in relevant part, that § 3161(h)(1)(D) does not subject all pretrial motion-related delay to automatic exclusion, but only the delay that occurs from the motion's filing through the conclusion of the hearing on, or other prompt disposition of, the motion. *Id.* at 206.

Similarly, in *Turner*, the defendant challenged the Government's delay in indicting him on charges under the indictment prong of the Speedy Trial Act, 602 F.3d at 782, which provides that an indictment must be filed within 30 days from the date

---

[11] Although Viera-Gongora excludes weekends, "the better reading of [§ 3161(h)(1)(F)] would include weekend days and holidays in its 10-day time period." *United States v. Tinklenberg*, 563 U.S. 647, 662 (2011).

on which the individual was arrested or served with a summons in connection with the charges, 18 U.S.C. § 3161(b). The defendant was arrested on June 1, 2005, and his indictment was issued on January 18, 2006. *Turner*, 602 F.3d at 782. Relying on dicta, the district court excluded "the entire delay" between the request for a competency evaluation and the competency hearing on the basis that the competency examination exclusion under § 3161(h)(1)(A) trumped the ten-day limit on transportation time under § 3161(h)(1)(F). *Id.* The Sixth Circuit held, instead, that any delay in transporting a defendant to a competency examination beyond the ten-day limit under § 3161(h)(1)(F) was presumptively unreasonable and, without rebutting evidence to explain the delay, this extra time was not excludable. *Id.* Unlike here, where Viera-Gongora seeks to impose § 3161(h)(1)(F) before the triggering date, the triggering event had occurred: the defendant was arrested on June 1, 2005, the time period began when the court ordered a competency examination for the defendant on June 8, 2005, and the time period stopped when the defendant arrived at the facility on August 12, 2005. *Id.* at 783. *Turner* does not support Viera-Gongora's argument.

Therefore, the Court will deny this motion, too.

## IV.   CONCLUSION

Accordingly, it is **ORDERED**:

1. The Joint Motion to Dismiss with Prejudice for Violation of the Sixth Amendment Right to a Speedy Trial, Federal Rule of Criminal Procedure

48(b), and Plan for Prompt Disposition of Criminal Cases (Doc. 47) is

**DENIED**.

2. The Motion to Dismiss with Prejudice for Violation of the Speedy Trial Act,

18 U.S.C. § 3161 (Doc. 64) is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on October 15, 2021.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any

38