UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No: 8:21-cr-121-CEH-JSS

VIRGILIO VALENCIA-GAMBOA,
CRISTIAN VIERA-GONGORA, and
PABLO DAVID ZAMORA-
MIRANDA
_____/

**ORDER**

This cause comes before the Court upon the Defense Motion in Limine #1 to Introduce Evidence and Request for Special Jury Instructions (Doc. 76), the United States' Response to Defense Motion in Limine #1 (Doc. 79), and Defendants' Joint Reply to United States' Opposition to Defense Motion in Limine #1 (Doc. 82).

In this criminal action under the Maritime Drug Law Enforcement Act, 46 U.S.C. § 70501 *et seq.*, Defendants Virgilio Valencia-Gamboa, Cristian Viera-Gongora, and Pablo David Zamora-Miranda move the Court to instruct the jury in the upcoming trial that the Government must prove, beyond a reasonable doubt, that Defendants knew specifically of the cocaine on board their vessel and the cocaine's weight. Defendants also seek to introduce testimony and evidence that they knew about only the marijuana on board the vessel, not the cocaine. However, Defendants' proposed instructions lack legal support and their present effort to introduce testimony and evidence is more appropriate for trial. Therefore, the motion will be denied, in part, and denied without prejudice, in part.

## I. BACKGROUND

In March of 2021, the United States Coast Guard detected a "go-fast" vessel in a known drug-trafficking area of international waters. Doc. 25-1 at 2. Packages consistent with contraband were visible on the vessel's deck. *Id.* The Coast Guard suspected the vessel of engaging in drug trafficking. *Id.* The Coast Guard found Defendants Virgilio Valencia-Gamboa, Cristian Viera-Gongora, and Pablo David Zamora-Miranda on board. *See* Doc. 1 at 1–3. The Coast Guard also discovered approximately 250 kilograms of cocaine and 100 pounds of marijuana. Doc. 25-1 at 4.

On April 1, 2021, a grand jury indicted Defendants on two counts: (1) knowingly and intentionally conspiring to possess with the intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, while on board a vessel subject to the United States' jurisdiction, in violation of 46 U.S.C. §§ 70503(a), 70506(a) and (b), and punishable under 21 U.S.C. § 960(b)(1)(B)(ii); and (2) knowingly and intentionally, while aiding and abetting each other and other persons unknown, possessing with the intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, while on board a vessel subject to the United States' jurisdiction, in violation of 46 U.S.C. §§ 70503(a), 70506(a), and 18 U.S.C. § 2, and punishable under 21 U.S.C. § 960(b)(1)(B)(ii). Doc. 1 at 1–2. The trial of this action is scheduled to commence on October 29, 2021.

Defendants move the Court to allow testimony about knowledge of the controlled substance and to allow jury instructions "requiring the Government [to]

2

prove knowledge of the controlled substance charged in the indictment." Doc. 76 at 1. In opposing this requested relief, the Government urges the Court to follow controlling precedent from the United States Supreme Court and the Eleventh Circuit and to instruct the jury that the United States must prove only that Defendants knew that they were transporting a "controlled substance," not the specifics of the substance or its weight. Doc. 79 at 1. In their reply, Defendants distinguish cases and ask the Court to allow them to present their full defense to the charges. Doc. 82 at 5.

## II.   DISCUSSION

First, Defendants seek to introduce testimony at trial that they were hired and paid to transport only marijuana, not cocaine. Doc. 76 at 2. Although the counts in the indictment pertain to the cocaine on the vessel, Coast Guard Commander Brian Chapman's certification under the Maritime Drug Law Enforcement Act, 46 U.S.C. § 70501 *et seq.* ("MDLEA"), indicates that the Coast Guard also discovered 100 pounds—the equivalent of 45.36 kilograms—of marijuana on board the vessel. Doc. 25-1 at 4. According to Defendants, the testimony that they seek to introduce would "offer proof" that they "never saw or had any knowledge that cocaine was on board nor did they ever make any agreements regarding cocaine." Doc. 76 at 2. They also contend that they will introduce evidence showing that they would not have agreed nor participated if they had known cocaine was involved. *Id.*

Next, Defendants ask the Court to issue instructions to the jury that "require the [G]overnment to prove [Defendants] had knowledge of the cocaine as well as the

3

weight beyond a reasonable doubt."[1] Doc. 76 at 3. Indeed, Defendants contend that the Court should require the Government "to prove the mens rea as to the facts of drug type and weight that increase a defendant's statutorily prescribed sentence." *Id.* Defendants contend that the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* ("CSA"), provides for mandatory minimum sentences that differ depending on the particular substance and quantity. *Id.* at 4. Citing to the CSA, Defendants assert that once the Government proves beyond a reasonable doubt that a defendant knowingly or intentionally possessed with the intent to distribute a controlled substance and that substance is one of eight controlled substances in an amount specified under the CSA, a mandatory minimum and enhanced maximum sentence automatically applies, despite the absence of any mens rea as to drug type and amount. *Id.* at 5. These arguments fail.

The analysis begins, as it must, with an overview of the relevant statutory language. The indictment charges Defendants with violations of the MDLEA. *See* Doc. 1 at 1–2. Under the MDLEA, an individual, while on board a "covered vessel," may not knowingly or intentionally possess with intent to distribute a "controlled

---

[1] Defendants attach copies of three Eleventh Circuit pattern jury instructions to the motion: Instruction O100 and two copies of Instruction O117.1. Docs. 76-1, 76-2. The provided copy of Instruction O100 differs from the pattern jury instruction only in that Defendants add language addressing 46 U.S.C. § 70503 and substitute relevant terms. Doc. 76-1 at 1. The two copies of Instruction O117.1 do not differ from the pattern instruction in any material respect. However, in light of the analysis herein, any conformity between the provided instructions and the pattern instructions does not warrant issuing instructions requiring the Government to prove, beyond a reasonable doubt, that Defendants had knowledge of the cocaine and its weight.

substance." 46 U.S.C. § 70503(a)(1).[2] Section 102 of the Comprehensive Drug Abuse Prevention and Control Act of 1970 ("Control Act") supplies a definition for "controlled substance," *see id.* § 70502(a), defining that term, in relevant part, as meaning "a drug or other substance . . . included in schedule I, II, III, IV, or V of part B of this subchapter," 21 U.S.C. § 802(6).[3] Cocaine is a schedule II controlled substance. *See id.* § 812. Marijuana is currently a Schedule I controlled substance. *See id.*; *United States v. Maupin*, 3 F.4th 1009, 1012 (8th Cir. 2021).

The MDLEA provides that an individual who violates § 70503(a)(1) must be punished as provided in section 1010 of the Control Act, 21 U.S.C. § 960. 46 U.S.C. § 70506(a). Similarly, an individual who attempts or conspires to violate § 70503(a)(1) is subject to the same penalties as provided for violating § 70503(a)(1). *Id.* § 70506(b).

In turn, under § 960(a) of the Control Act, any individual who possesses with intent to distribute a controlled substance shall be punished as provided in § 960(b). 21 U.S.C. § 960(a). Subsection (b) provides:

> In the case of a violation of subsection (a) of this section involving . . . 5 kilograms or more of a mixture of substance containing a detectable amount of . . . cocaine . . . the person committing such violation shall be sentenced to a term of imprisonment of not less than 10 years and not more than life . . . a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $10,000,000 if the defendant is an individual . . . or both.

---

[2] The MDLEA defines "covered vessel," in relevant part, as meaning "a vessel of the United States or a vessel subject to the jurisdiction of the United States." 46 U.S.C. § 70503(e)(1).

[3] Also, the CSA is located at Title II of the Control Act. *Sharma v. Drug Enforcement Agency*, 511 F. App'x 898, 902 (11th Cir. 2013).

5

*Id.* § 960(b)(1)(B)(ii). Each count of the indictment states that the statutory violations charged thereunder are punishable under § 960(b)(1)(B)(ii). Doc. 1 at 1–2.

The penalties under § 960(b) depend upon the type and quantity of drug involved. For example, in the case of a violation of § 960(a) involving 100 kilograms or more of a substance or mixture containing a detectable amount of marijuana, the individual who commits such violation must be sentenced "to a term of imprisonment of not less than 5 years and no more than 40 years," among other penalties. 21 U.S.C. § 960(b)(2)(G). And for a violation under § 960(a) with respect to less than 50 kilograms of marijuana, the individual who commits such violation must be sentenced in accordance with § 841(b)(1)(D), which requires the individual to "be sentenced to a term of imprisonment of not more than 5 years," among other penalties. *Id.* §§ 960(b)(4), 841(b)(1)(D).

In *Apprendi v. New Jersey*, the United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000). Recognizing that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must submitted to the jury beyond a reasonable doubt," the Supreme Court held over a decade later that, because mandatory minimum sentences increase the penalty for a crime, "any fact that increases the mandatory minimum" is also an element "that must be submitted to the jury." *Alleyne v. United States*, 570 U.S. 99, 104 (2013).

But "[o]rdinarily, controlled-substance offenses require the government to prove the defendants' mens rea only with respect to controlled substances generally." *United States v. Nunez*, 1 F.4th 976, 989 (11th Cir. 2012) (citing *United States v. Lewis*, 676 F.2d 508, 512 (11th Cir. 1982)). Thus, in a similar case where the Government charged the defendants under §§ 70503(a)(1) and 70506(b) for possessing cocaine with intent to distribute and conspiring to distribute and to possess cocaine with intent to distribute, the Eleventh Circuit held that in the context of the MDLEA, the Government "ordinarily must prove only that the defendants knew they were transporting a controlled substance, not that they knew the controlled substance was cocaine." *Id.* The statutory language of § 70503(a)(1) supports this conclusion: the statute provides that "an individual may not knowingly or intentionally . . . manufacture or distribute, or possess with intent to manufacture or distribute, a *controlled substance*." 46 U.S.C. § 70503(a)(1) (emphasis added). And Eleventh Circuit precedent instructs that, even when considering the holding in *Alleyne* that "the core crime and [any] fact[s] triggering [a] mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to a jury," mens rea with respect to the specific controlled substance does not serve as an element of the crime. *Nunez*, 1 F.4th at 990 (alterations in original) (internal quotation marks omitted). Thus, *Nunez* establishes that the Government must prove only that Defendants knew they were transporting a controlled substance, not that they knew that the controlled substance was cocaine, and that mens rea with respect to the specific controlled substance is not an element of the crime.

7

Also instructive are cases from the Supreme Court and the Eleventh Circuit concerning the knowledge requirement in the CSA. The relevant provisions of the MDLEA and the Control Act are similar to provisions of the CSA. Similar to 21 U.S.C. § 841(a)(1), 46 U.S.C. § 70503(a)(1) prohibits any individual from knowingly or intentionally possessing with intent to distribute a controlled substance, albeit while on board a covered vessel.[4] The MDLEA provides that a person who violates this provision must be punished under section 1010 of the Control Act, found at 21 U.S.C. § 960, which, like § 841(b), provides penalties for any person who knowingly or intentionally possesses with intent to distribute a controlled substance. Like § 841(b), § 960(b) provides penalties for violations of the prior subsection—§ 960(a)—for cases "involving" certain quantities and types of drugs. Thus, § 841 serves as a helpful analogue in examining the pertinent provisions of the MDLEA and the Control Act.

The Supreme Court has held that "[t]he ordinary meaning of § 841(a)(1) . . . requires a defendant to know only that the substance he is dealing with is some unspecified substance listed on the federal drug schedules." *McFadden v. United States*, 576 U.S. 186, 192 (2015). In other words, "[a]s the text of the statute shows, a person violates § 841(a)(1) when she knowingly possesses with the intent to distribute illegal drugs of some sort, even if she does not know exactly which controlled substance it is. *United States v. Colston*, 4 F.4th 1179, 1187 (11th Cir. 2021); *see United States v. Sanders*,

---

[4] As mentioned above, the MDLEA states that a person who attempts or conspires to violate § 70503 is subject to the same penalties as provided for violating that section. 46 U.S.C. § 70506. Similarly, a person who attempts or conspires to violate § 841(a)(1) is "subject to the same penalties as those prescribed" for that offense. 21 U.S.C. § 846.

668 F.3d 1298, 1309 (11th Cir. 2012) ("As is evident from the statutory language, a person violates § 841(a) merely by knowingly possessing with intent to distribute a controlled substance. The § 841(a) offense is complete once the person commits the proscribed act and knows that the substance is a 'controlled substance.'"). This knowledge requirement "may be met by showing that the defendant knew he possessed a substance listed on the schedules, even if he did not know which substance it was," or "by showing that the defendant knew the identity of the substance he possessed." *McFadden*, 576 U.S. at 192.

"[U]nder *Apprendi* and *Alleyne*, an indictment must charge—and a jury must find beyond a reasonable doubt—that an offense involved a particular drug type and quantity before a defendant can receive an enhanced sentence under § 841(b)(1)." *Colston*, 4 F.4th at 1188. However, unlike § 841(a)(1), § 841(b) does not contain a mens rea requirement; instead, the penalties under § 841(b) "are based on only the type and quantity of drug 'involved,' not on what the defendant knew." *Id.* Indeed, § 841(b)(1) provides penalties for violations of § 841(a) for cases "involving" certain quantities and types of drugs. 21 U.S.C. § 841(b)(1). Thus, even though a defendant must know that a controlled substance is involved to be convicted under § 841(a)(1) or § 846, "the only things that matter for § 841(b) are the type and quantity of the substance; whether the defendant was specifically aware of those facts is irrelevant." *Colston*, 4 F.4th at 1188. As a result, when the Government charges violations of § 841(a)(1) and § 846 and specifies the drugs involved to seek enhanced penalties under § 841(b)(1), it must prove

9

the defendant's mens rea only for the substantive violation, not the specified drug charged. *Id.*

Here, the indictment charges that the offenses involved five kilograms or more of cocaine. Like § 841(b)(1), § 960(b)(1) does not contain a mens rea requirement. Like the penalties under § 841(b), the penalties under § 960(b) are based upon the type and quantity of drug involved, not what the defendant knew. As such, although the Government must prove beyond a reasonable doubt that Defendants knew that a controlled substance was involved, the type and quantity of the controlled substance is relevant only to the penalties under § 960(b) and whether Defendants were aware of those facts is "irrelevant." *Colston*, 4 F.4th at 1188. Defendants do not argue in the motion or their reply that § 841 is distinguishable; instead, the motion teems with references to § 841, and their reply focuses mainly on distinguishing cases.

Thus, Defendants' request for the Court to issue instructions to the jury requiring the Government to prove, beyond a reasonable doubt, "the mens rea as to the facts of drug type and weight that increase a defendant's statutorily prescribed sentence" lacks legal support. While the Eleventh Circuit reviews *de novo* whether jury instructions correctly state the law, it reviews a district court's refusal to give a requested instruction only for abuse of discretion. *United States v. Hill*, 643 F.3d 807, 850 (11th Cir. 2011). Generally, "[a] criminal defendant has the right to have the jury instructed on her theory of defense, separate and apart from instructions given on the elements of the charged offense." *United States v. Ruiz*, 59 F.3d 1151, 1154 (11th Cir. 1995). "A trial court may not refuse to charge the jury on a specific defense theory

10

where the proposed instruction presents a valid defense and where there has been some evidence adduced at trial relevant to that defense." *Id.* at 1154. "The trial court is not free to determine the existence of such defense as a matter of law." *Id.* Indeed, the law entitles the defendant to have the Court present instructions pertaining to a theory of defense "for which there is any foundation in the evidence." *Id.* (original emphasis removed) (internal quotation marks omitted). But "[a] district court's refusal to deliver a requested instruction constitutes reversible error only where the instruction (1) *is correct*, (2) is not substantially covered by other instructions which were delivered, and (3) deals with some point in the trial so vital that the failure to give the requested instruction seriously impaired the defendant's ability to defend." *Id.* (emphasis added) (internal quotation marks omitted). Because Defendants' proposed instructions incorrectly require the Government to prove the mens rea as to drug type and weight, the Court declines to give the requested instructions.

      Defendants' arguments and attempts to distinguish cases in their reply are unpersuasive. Defendants argue that *Nunez* and *Colston* are distinguishable because the Eleventh Circuit affirmed the verdicts in those cases following sufficiency-of-the evidence reviews. Doc. 82 at 4. But the Eleventh Circuit's recitations of the legal principles set forth in *Nunez* and *Colston* did not depend upon or result from reviews concerning the sufficiency of the evidence. Thus, the sufficiency-of-the-evidence review in each case does not render that case distinguishable or otherwise inapposite. Defendants also argue that neither *Nunez* nor *Colston* "addressed a defendant presenting evidence that the drug possessed was different, with lesser penalty schemes,

11

from the drug charged in the indictment." *Id.* However, Defendants fail to explain why this distinction warrants departing from those cases or issuing the requested jury instructions in light of the analysis above. The rules articulated in *Nunez* and *Colston* demonstrate that this distinction is immaterial. The Government need only prove that Defendants "knew they were transporting a controlled substance." *Nunez*, 1 F.4th at 989 (citing 46 U.S.C. § 70503(a)(1)). The type and quantity of controlled substance is relevant only for the penalties § 960(b), and whether Defendants were aware of those facts is "irrelevant." *Colston*, 4 F.4th at 1188.

Similarly, Defendants' argument that the defendant in *McFadden* "was permitted to fully argue that he had no knowledge that the particular substances were regulated by the Analogue Substances Act" is unavailing. *Id.* The issue in *McFadden* concerned the knowledge required for conviction under § 841(a)(1) when the controlled substance at issue is an analogue.[5] 576 U.S. at 188. The Supreme Court held that § 841(a)(1) requires the Government to establish that the defendant knew he was dealing with "a controlled substance." *Id.* at 188–89. When the substance is an analogue, the Court explained, the knowledge requirement under § 841(a)(1) is met if: (1) the defendant knew that the substance was controlled under the CSA or the Analogue Act, regardless of whether he did not know the substance's identity; or (2)

---

[5] As explained in *McFadden*, "[t]he Controlled Substance Analogue Enforcement Act of 1986, 21 U.S.C. § 802(32)(A), identifies a category of substances substantially similar to those listed on the federal controlled substance schedules . . . and then instruct courts to treat those analogues, if intended for human consumption, as controlled substances listed on schedule I for purposes of federal law, § 813." 576 U.S. at 188.

the defendant knew the specific features of the substance that make it a "controlled substance analogue" under 21 U.S.C. § 802(32)(A). *Id.* at 189. In discussing the second avenue for knowledge, the Court explained that the Analogue Act defined a controlled substance analogue by its features. *Id.* at 194–95. Defendants fail to explain why the recognition that a defendant need not know that the Analogue Substances Act regulates particular substances in order to find knowledge under § 841(a)(1) when the controlled substance is an analogue, warrants issuing jury instructions requiring the Government to prove mens rea as to drug type and quantity.

Defendants also point out that *McFadden* did not address the jury's role "in finding facts concerning knowledge of the kind and quantity of substance that can change the criminal penalties applied," but this recognition does not render inapplicable the Supreme Court's discussion of § 841(a), as cited by the Government in its response and the Court in this order. Doc. 79 at 4. As discussed above, Eleventh Circuit case law addresses the issue of knowledge as to the kind and quantity of the substance. And Defendants argue that this action does not present a scenario over types of "white powder," but instead presents a scenario "between cocaine and a green, leafy substance that is presently lawful to possess and use in various states in the United States and in many countries around the world." *Id.* However, this argument does not reveal any basis for the proposed instructions and ignores marijuana's classification as a Schedule I controlled substance. Defendants' remaining arguments lack merit. Therefore, the Court will deny Defendants' request for jury

13

instructions requiring the Government to prove Defendants had knowledge of the cocaine, as well as its weight, beyond a reasonable doubt.

Finally, to the extent that Defendants seek to introduce testimony or evidence that they were hired and paid to transport only marijuana, that they never saw or knew that cocaine was onboard, and that they did not agree to transport cocaine, this testimony is not relevant to the charged offenses, given the above analysis. Whether this testimony is relevant for some other purpose or will be offered for some other purpose is unknown. To that extent, the request may be renewed at trial, where the Court can determine the relevancy and admissibility of the testimony in the context of trial testimony. During trial, Defendants will have the opportunity to select which testimony or evidence to offer, subject to the Federal Rules of Evidence and any successful objections by the Government. Thus, the Court will deny, without prejudice, Defendants' request to introduce this testimony and evidence.

### III.   CONCLUSION

Accordingly, it is **ORDERED** that the Defense Motion in Limine #1 to Introduce Evidence and Request for Special Jury Instructions (Doc. 76) is **DENIED**, **in part**, and **DENIED without prejudice**, in part. The motion is **denied** as to Defendants' requested jury instructions. The motion is **denied without prejudice** as to Defendants' request to introduce certain testimony and evidence.

**DONE AND ORDERED** in Tampa, Florida on October 22, 2021.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any